# 13-3426-CV

# United States Court of Appeals

*for the*

# Second Circuit

GOVINDLAL K. BHANUSALI, M.D.,
GOVINDLAL K. BHANUSALI, MD, PC,

*Plaintiffs-Appellants,*

– v. –

ORANGE REGIONAL MEDICAL CENTER, domestic nonprofit organization,
CRYSTAL RUN HEALTHCARE LLP, BOARD OF DIRECTORS OF THE
ORANGE REGIONAL MEDICAL CENTER, M.D. HAL D. TEITELBAUM,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES ORANGE REGIONAL MEDICAL CENTER, BOARD OF DIRECTORS OF THE ORANGE REGIONAL MEDICAL CENTER, LOU HEIMBACH, SCOTT BATULIS, GERARD J. GALARNEAU, M.D. AND JAMES E. OXLEY, DO

FULBRIGHT & JAWORSKI LLP
*Attorneys for Defendants-Appellees*
*Orange Regional Medical Center, Board of*
*Directors of the Orange Regional Medical*
*Center, Lou Heimbach, Scott Batulis, Gerard*
*J. Galarneau, M.D. and James E. Oxley, DO*

DOUGLAS P. CATALANO
NEIL G. SPARBER
SAMANTHA E. BELTRE
*Of Counsel*

666 Fifth Avenue, 31st Floor
New York, New York 10103
(212) 318-3000

individually and as Chief Executive Officer of Crystal Run Health Care, SCOTT
BATULIS, individually and as President and Chief Executive Officer of Orange
Regional Medical Center, M.D. GREGORY SPENCER, individually and as
Chairman of Staff and as Chairman of the Medical Executive Committee at
Orange Regional Medical Center, M.D. GERARD J. GALARNEAU, individually
and as Chief of Staff at Orange Regional Medical Center, DO, JAMES E.
OXLEY, individually and as Vice President Medical Affairs/Medical Director of
Orange Regional Medical Center, M.D. KEVIN TRAPP, individually and as the
Department Chair of Orthopedics at Orange Regional Medical Center,
M.D. CHRISTOPHER INZERILLO, individually and as the Vice Chair of the
Orthopedics Department at ORMC, LOU HEIMBACH,
AKA Lou Heimbach, M.D.,

*Defendants-Appellees.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellee Orange Regional Medical Center, a 501(c)(3) non-profit organization, certifies that Orange Regional Medical Center and its corporate parents and affiliates are all completely private not-for-profit holdings, and no portion of the ownership of those entities is publicly held.

Dated:  March 17, 2014

> Douglas P. Catalano
> Neil G. Sparber
> FULBRIGHT & JAWORSKI LLP
> 666 Fifth Avenue, 31st Floor
> New York, New York 10103
> Telephone:  (212) 318-3000
> douglas.catalano@nortonrosefulbright.com
> neil.sparber@nortonrosefulbright.com
> *Attorneys for Defendants-Appellees Orange Regional Medical Center, Board of Directors of Orange Regional Medical Center, Lou Heimbach, Scott Batulis, Gerard Galarneau, M.D., and James Oxley, D.O.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................i

COUNTERSTATEMENT OF ISSUES ..................................................1

SUMMARY OF DEFENDANTS'-APPELLEES' ARGUMENT ........................2

STATEMENT OF THE CASE ...............................................................5

    A.      PROCEDURAL HISTORY ................................................5

    B.      STATEMENT OF FACTS.................................................7

          1.    Discrimination Claims ...........................................11

          2.    Antitrust Claims ..................................................13

          3.    The District Court's Order Dismissing the TAC ....................15

                (i)     Dismissal of Discrimination Claims...........................15

                (ii)    Dismissal of Antitrust Claims.............................17

ARGUMENT ..............................................................................19

STANDARD OF REVIEW ...............................................................19

POINT I     THE DISTRICT COURT CORRECTLY DISMISSED
                BHANUSALI'S ANTITRUST CLAIMS.........................................20

    A.    The District Court Properly Determined That the TAC Did Not
          Contain Facts To Plausibly Allege Antitrust Standing .....................20

    B.    The TAC Failed to Plausibly Allege an Antitrust Conspiracy ..........33

POINT II    THE DISTRICT COURT APPLIED THE CORRECT
               STANDARD IN DETERMINING THAT BHANUSALI
               FAILED TO ALLEGE A PLAUSIBLE INFERENCE OF
               DISCRIMINATION AND PROPERLY DISMISSED
               BHANUSALI'S DISCRIMINATION CLAIMS..............................36

    A.    Standard.....................................................................36

    B.    The District Court Applied the Correct Standard .............................37

    C.    The District Court Correctly Held that Bhanusali Failed to
          Plausibly Allege an Inference of Discrimination ............................38

# TABLE OF CONTENTS
(continued)

Page

POINT III  EVEN IF THIS COURT WERE TO CONSIDER THE AMICI
CURIAE BRIEF, THE DISTRICT COURT'S ORDER
SHOULD BE AFFIRMED ................................................................45

CONCLUSION ..................................................................................................49

CERTIFICATE OF COMPLIANCE....................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiossa v. Bank of Am., N.A.,*
No. 10-CV-1275, 2012 WL 4344183 (E.D.N.Y. Sept. 21, 2012).....................44

*Algarin v. City of New York,*
No. 12 Civ. 1264, 2012 WL 4824988 (S.D.N.Y. Oct. 10, 2012)......................40

*Ambook Enterprises v. Time, Inc.,*
612 F.2d 604 (2d Cir. 1979) ...........................................................................46

*Angelico v. Lehigh Valley Hosp., Inc.,*
184 F.3d 268 (3rd Cir. 1999) ...........................................................................30

*Arista Records, LLC v. Doe 3,*
604 F.3d 110 (2d Cir. 2010) ............................................................................47

*Ashcroft v. Iqbol,*
556 U.S. 662 (2009)..........................................................................................34

*Aventis Envtl. Sci. USA LP v. Scotts Co.,*
383 F. Supp. 2d 488 (S.D.N.Y. 2005) ..............................................................21

*Balaklaw v. Lovell,*
14 F.3d 793 (2d Cir. 1994) ......................................................20, 21, 28, 33

*Barbosa v. Continuum Health Partners, Inc.,*
716 F. Supp. 2d 210 (S.D.N.Y. 2010) ..............................................................36

*BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n,*
36 F.3d 664 (7th Cir. 1994) .......................................................................32, 33

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................19, 34, 37, 47

*Boczar v. Manatee Hospitals & Health Sys., Inc.,*
993 F.2d 1514 (11th Cir. 1993) ........................................................................31

*Bogan v. Hodgkins,*
166 F.3d 509 (2d Cir. 1999) .............................................................................46

Boykin v. KeyCorp.,
    521 F.3d 202 (2d Cir. 2008) ................................................................48

Brader v. Allegheny Gen. Hosp.,
    64 F.3d 869 (3d Cir. 1995) .........................................................32, 33

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
    429 U.S. 477 (1977) ...........................................................................21

Capital Imaging Assoc. P.C. v. Mohawk Valley Med. Assoc., Inc.,
    996 F.2d 537 (2d Cir. 1993) ..............................................................35

Cohlmia v. Ardent Health Services,
    448 F. Supp. 2d 1253 (N.D.Ok. 2006)..........................................31, 32

Daniel v. Am. Bd. of Emergency Med.,
    428 F.3d 408 (2d Cir. 2005) .........................................................28, 29

Dean v. Westchester County District Attorney's Office,
    119 F. Supp. 2d 424 (S.D.N.Y. 2000) ..........................................41, 42

Erickson v. Pardus,
    551 U.S. 89 (2007)..............................................................................48

Frantzides v. Northshore Univ. Healthsystem Faculty Practice
    Assocs.,
    787 F. Supp. 2d 725 (N.D. Ill. 2011)..................................................26

Gaala v. Brown,
    460 Fed. Appx. 469 (5th Cir. 2012).....................................................48

George Haug Co. v. Rolls Royce Motor Cars Inc.,
    148 F.3d 136 (2d Cir. 1998) ...............................................................20

Giraud v. Bd. of Educ.,
    No. 12-CV-1842, 2013 WL 3776242 (S.D.N.Y. July 17, 2013)........................38

Graham v. Long Island R.R.,
    230 F.3d 34 (2d Cir. 2000) .................................................................43

Guinn v. Mount Carmel Health,
    No. 2:09-CV-226, 2012 WL 628519 (S.D. Ohio Feb. 27, 2012).....21, 22, 26, 28

v

Hedges v. Town of Madison,
　　456 Fed. Appx. 22 (2d Cir. 2012)................................................................37, 38

Jefferson Parish Hosp. Dist. No. 2 v. Hyde,
　　466 U.S. 2 (1984)........................................................................................22, 23

Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.,
　　No. 09 Civ. 12, 2009 WL 3682458 (S.D.N.Y. Oct. 29, 2009)..............39, 41, 43

Johnson v. Nyack Hosp.,
　　954 F. Supp. 717 (S.D.N.Y. 1997) ..............................................................35, 36

Kassman v. KPMG, LLP,
　　925 F. Supp. 2d 453 (S.D.N.Y. 2013) ...............................................................38

Klor's, Inc. v. Broadway-Hale Stores,
　　359 U.S. 207 (1959)...........................................................................................46

Korshin v. Benedictine Hosp.,
　　34 F. Supp. 2d 133 (N.D.N.Y. 1999).................................................................25

Lawless v. TWC Media Solutions, Inc.,
　　487 Fed. Appx. 613 (2d Cir. 2012)....................................................................42

Lizardo v. Denny's Inc.,
　　270 F.3d 94 (2d Cir. 2001) ................................................................................39

Loucar v. Boston Mkt. Corp.,
　　294 F. Supp. 2d 472 (S.D.N.Y. 2003) ...............................................................42

Mabry v. Neighborhood Defender Serv.,
　　769 F. Supp. 2d 381 (S.D.N.Y. 2011) ...............................................................37

Mahmud v. Kaufman,
　　454 F. Supp. 2d 150 (S.D.N.Y. 2006) ...............................................................30

Mahmud v. Kaufman,
　　496 F. Supp. 2d 266 (S.D.N.Y. 2007) ...................................................30, 35, 36

Martin v. State Univ. of New York,
　　704 F. Supp. 2d 202 (E.D.N.Y. 2010) ...............................................................38

Mathews v. Lancaster Gen. Hosp.,
    883 F. Supp. 1016 (E.D. Pa. 1995), aff'd, 87 F.3d 624 (3d Cir.
    1996) ...................................................................................................... 23

Mayor & Council of Baltimore v. Citigroup, Inc.,
    709 F.3d 129 (2d Cir. 2013) ................................................................ 19, 46, 47

McManamon v. Shinseki,
    No. 11 Civ. 7610, 2013 WL 3466863 (S.D.N.Y. July 10, 2013) ...................... 38

Muhammad v. Juicy Couture/Liz Claiborne, Inc.,
    No. 09 Civ. 8978, 2010 WL 4032735 (S.D.N.Y. July 30, 2010) ...................... 37

Murphy v. Board of Educ.of the Rochester City Sch. Dist.,
    273 F. Supp. 2d 292 (W.D.N.Y. 2003) ............................................................. 44

In re Nasdaq Mkt.-Makers Antitrust Litig.,
    894 F. Supp. 703 (S.D.N.Y. 1995) ................................................................... 34

New York MedScan LLC v. New York Univ. Sch. of Med.,
    430 F. Supp. 2d 140 (S.D.N.Y. 2006) ......................................................... 29, 30

Nilavar v. Mercy Health Sys. W. Ohio,
    142 F. Supp. 2d 859 (S.D. Ohio 2000) ............................................................ 31

Oksanen v. Page Mem'l Hosp.,
    945 F.2d 696 (4th Cir. 1991) (en banc) ........................................................... 23

Perinatal Med. Group, Inc. v. Children's Hosp. Cent. Cal.,
    No. CV 09-1273, 2010 WL 1525511 (E.D. Cal. Apr. 15, 2010) ...................... 31

Piccone v. Board of Dirs. of Doctors Hosp. of Staten Island, Inc.,
    No. 97 Civ. 8182, 2000 WL 1219391 (S.D.N.Y. Aug. 25, 2000) ........................

    ............................................................................. 20, 22, 23, 25, 28, 32

Pierson v. Orlando Regional Healthcare Sys.,
    619 F. Supp. 2d 1260 (M.D. Fla. 2009) ....................................................... 27, 28

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,
    507 F.3d 117 (2d Cir. 2007) ............................................................................ 19

Purgess v. Sharrock,
    No. 91 Civ. 621, 1992 WL 349683 (S.D.N.Y. Nov. 9, 1992)............................35

Risco v. McHugh,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012) ...................................................39

Robinson v. Goulet,
    525 Fed. Appx. 28 (2d Cir. 2013)........................................................48

Ruiz v. County of Rockland,
    609 F.3d 486 (2d Cir. 2010) .............................................................39

Salamon v. Our Lady of Victory Hosp.,
    No. 99-CV-0048E(H), 1999 WL 955513 (W.D.N.Y. Oct. 5, 1999)
    ...........................................................................20, 24, 25, 28

Santos v. Peralta Cmty. Coll. Dist.,
    No. C-07-5227, 2009 WL 3809797 (N.D. Cal. Nov. 13, 2009).......................45

Smith v. Pro Football, Inc.,
    593 F.2d 1173 (D.C. Cir. 1978).........................................................46

Solla v. Aetna Health Plans, Inc.,
    14 F. Supp. 2d 252 (E.D.N.Y. 1998) ...................................................35

Stepheny v. Brooklyn Hebrew Sch. For Special Children,
    356 F. Supp. 2d 248 (E.D.N.Y. 2005) .................................................40

Thompson v. New York City,
    No. 12 Civ. 8034, 2013 WL 6409326 (S.D.N.Y. Dec. 9, 2013) ....................38

Tomasino v. Mount Sinai Med. Ctr. & Hosp.,
    No. 97 Civ. 5252, 2003 WL 1193726 (S.D.N.Y. Mar. 13, 2003).....................40

Trachtenberg v. Dept. of Educ. Of City of New York,
    937 F. Supp. 2d 460 (S.D.N.Y. 2013) ............................................38, 43

Wagner v. Magellan Health Servs., Inc.,
    121 F. Supp. 2d 673 (N.D. Ill. 2000).................................................23

Zoellner v. St. Lukes Regional Med. Center, Ltd.,
    No. 1:11-CV-00382, 2012 WL 2326070 (D. Idaho June 19, 2012)..................27

**Rules and Statutes**

15 U.S.C. Section 1 .......................................................13, 33, 34

42 U.S.C. Sections 1981 and 1985 .......................................................11

Fed. R. Civ. P. 12(b)(6).......................................................5, 19, 37, 49

## COUNTERSTATEMENT OF ISSUES

1.     Where the District Court determined that plaintiff-appellant Bhanusali[1]  failed to allege how the temporary suspension of, and restrictions placed on, his surgical privileges at defendant-appellee Orange Regional Medical Center caused harm to competition in the market, rather than to Bhanusali as a competitor, because there were no factual allegations: (i) concerning the choice patients had following the removal of one orthopedic surgeon, Bhanusali, from among an unstated number of orthopedic surgeons in a relatively large geographic market; (ii) that patients could no longer receive the kinds of services Bhanusali provided; (iii) that patients are unable to receive quality care from doctors other than Bhanusali; and (iv) that the price of orthopedic surgical services has increased by the elimination of a single orthopedic surgeon from the relevant market, did the District Court properly determine that Bhanusali did not plausibly allege facts to support an antitrust injury, and properly dismiss Bhanusali's antitrust claims in the complaint?

Defendants-appellees respectfully submit that the question should be answered in the affirmative.

2.     Where the District Court determined that plaintiff-appellant Bhanusali (i) failed to provide any information about three or four of the six incidents of

---

[1] Plaintiffs-appellants Govindlal K. Bhanusali, M.D. and Govindlal K. Bhanusali, M.D., P.C. will be referred to collectively as "Bhanusali" throughout this brief.

medical misconduct that led to his discipline, (ii) alleged only one incident of medical misconduct for all but one of the alleged comparators, and only two incidents of medical misconduct for the other comparator, while he was only disciplined after six incidents of medical misconduct, and (iii) failed to provide any facts regarding the experience of the comparator-doctors relative to Bhanusali, did the District Court properly determine that Bhanusali did not plausibly allege facts to support an inference that Bhanusali was discriminated against on the basis of his race, national origin, or age, and properly dismiss the discrimination claims in the complaint?

Defendants-appellees respectfully submit that the question should be answered in the affirmative.

## SUMMARY OF DEFENDANTS'-APPELLEES' ARGUMENT

This action centers around the temporary suspension of, and restrictions placed on, the surgical privileges of a single orthopedic surgeon, plaintiff-appellant Dr. Bhanusali ("Bhanusali"), at defendant-appellee Orange Regional Medical Center ("ORMC") as a result of concerns over the quality of patient care exercised by Bhanusali, the *bona fides* of which were upheld by the New York Public Health Council ("PHC"). The claims alleged by Bhanusali in the District Court below, decided by the District Court in its August 12, 2013 Order (the "Order") and at issue on this appeal, are: (i) that the restriction of Bhanusali's surgical privileges

was purportedly a result of a conspiracy to discriminate against him based on his age (62), national origin (Indian), and race (Asian); and (ii) that the restriction placed on Bhanusali's surgical privileges at ORMC was purportedly a result of a conspiracy to restrain trade unlawfully in violation of federal and state antitrust laws.

While Bhanusali's Third Amended Complaint ("TAC") contains allegations that various doctors engaged in various inappropriate procedures at ORMC for which no discipline was imposed, the District Court in its August 12, 2013 Order correctly held that Bhanusali failed to sufficiently allege that others who were similarly situated in all material respects to Bhanusali were treated more favorably by the ORMC defendants-appellees.[2]  Moreover, the District Court held that Bhanusali failed to raise a plausible inference of discrimination and, as a result, the District Court properly dismissed Bhanusali's first, second, third, fourth, and fifth causes of actions.  Finally, it is clear that the TAC, in the sixth cause of action, also fails to allege sufficiently that Bhanusali has standing to raise an antitrust claim, i.e., more than just harm to Bhanusali as a purported competitor, rather than harm to competition in the relevant market, and he therefore fails to state a claim for any antitrust violation.

---

[2] The "ORMC defendants-appellees" are Orange Regional Medical Center, Board of Directors of Orange Regional Medical Center, Lou Heimbach, Scott Batulis, Gerard Galarneau, M.D., and James Oxley, D.O.

For the reasons set forth below, the District Court's Order dismissing the TAC should be affirmed in its entirety.

## STATEMENT OF THE CASE

**A.    PROCEDURAL HISTORY**

This action was commenced on or about September 8, 2010 by Bhanusali with the filing of the complaint which alleged causes of action for (i) discrimination and retaliation based on race, age, national origin, and ethnicity under various federal statutes, (ii) federal and state antitrust claims, and (iii) certain tort claims arising out the temporary suspension of, and restrictions placed on, Bhanusali's surgical privileges at ORMC. [JA 19-53].[3]  Following defendants'-appellees' request for a pre-motion conference with the District Court concerning their desire to move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), Bhanusali filed the First Amended Complaint on March 31, 2011. [JA 5-8; 54-97]. Notably, during the pre-motion conference before the District Court, the District Court specifically advised Bhanusali of the need for "further facts to render plausible the connection between [Bhanusali]'s race/origin/age and what had happened to [Bhanusali]," and that "further facts were necessary with respect to the antitrust claim." [JA 118 and n.10].

The ORMC defendants thereafter moved to dismiss the First Amended Complaint, and in a Decision and Order, dated January 20, 2012, the District Court granted in part and denied in part the motion. [JA 98-121].   Bhanusali's federal

---

[3] References to pages of the Joint Appendix are set forth as "[JA ____]."

antitrust claim was dismissed without prejudice based on the pending review of the restrictions placed on Bhanusali's privileges by the New York Public Health Council. [JA 105-109, 121]. The District Court also dismissed Bhanusali's Title VI cause of action and the cause of action for declaratory judgment, without leave to amend. [JA 121]. The District Court dismissed Bhanusali's discrimination claims, with leave to replead, for "failure to specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of discrimination." [JA 111-112]. The District Court specifically warned Bhanusali that:

> any Second Amended Complaint ("SAC") would have to include specifics (not simply information and belief, or conclusory allegations) regarding others similarly situated who were more favorably treated, sufficient to show both that the others' conduct was similar to Plaintiff's and that they were subjected to less exacting scrutiny, which would render plausible an inference of discrimination.

[JA 118-119, 121]. The District Court similarly dismissed Bhanusali's retaliation claims, with leave to replead, pointing out those deficiencies in the First Amended Complaint which Bhanusali would need to address. [JA 119-121]. The District Court permitted Bhanusali to file a Second Amended Complaint within 21 days of its order. [JA 121].

On or about February 28, 2012 Bhanusali filed a Second Amended Complaint. [JA 125-160]. The parties thereafter appeared before the District

Court for a pre-motion conference regarding the defendants'-appellees' request to move to dismiss the Second Amended Complaint [JA 12-13], at which time Bhanusali requested permission to file a Third Amended Complaint. The District Court granted Bhanusali's request, and on May 7, 2012, he filed the TAC. [JA 161-204]. The TAC realleged Bhanusali's discrimination claims as well as Bhanusali's federal and state antitrust claims. The defendants-appellees thereafter moved to dismiss the TAC and the District Court granted the motion dismissing the TAC in an Order, dated August 12, 2013 [JA 214-237], which Order is the subject of this appeal before this Court.

**B.    STATEMENT OF FACTS[4]**

The TAC alleges that Bhanusali is a 62 year old Asian Indian-American board-certified orthopedic surgeon who maintains a solo private practice in Middletown, New York, and that he was first appointed to defendant ORMC's medical staff in 1983. [JA 163, ¶¶ 6-9]. The TAC alleges that in 2009 Bhanusali was subjected to a "sham peer review" process, prompted by defendant Kevin Trapp, a physician affiliated with co-defendant-appellee Crystal Run Healthcare LLP ("Crystal Run") and the Department Chair of Orthopedics at ORMC, following a rotator cuff surgery that Bhanusali performed on a patient on May 5,

---

[4] The statement of facts refers to the allegations in the complaint. For purposes of defendants' motion to dismiss the TAC only, the ORMC defendants assumed the truth of facts alleged in the TAC.

2009. [JA 176, ¶¶ 79-80]. Bhanusali alleges that he had been assisted in a prior surgery by another doctor who was required to leave prior to the surgery, but because the patient had been given an anesthetic Bhanusali allegedly sought permission from Drs. Oxley and Trapp to perform the surgery unassisted. [JA 176, ¶ 81]. In response, Drs. Oxley and Trapp allegedly told Bhanusali that he should cancel the surgery, but after Bhanusali persisted in wanting to go forward with the surgery Dr. Trapp decided to join Bhanusali in the surgery. [JA 176, ¶ 82]. Bhanusali alleges that during the surgery Dr. Trapp expressed anger towards Bhanusali and criticized him throughout the surgery. [JA 177, ¶ 86].

According to the TAC, the following day, May 6, 2009, a meeting of the ORMC Physicians Excellence Committee ("PEC") was purportedly held. [JA 177, ¶ 87]. Bhanusali alleges that Drs. Oxley, Spencer, Menezes, Ma, Inzerillo, Nicoll, and Trapp were present at the PEC meeting of May 6, 2009, all of whom were affiliated with Crystal Run except for Dr. Oxley. [JA 177, ¶ 89]. Bhanusali alleges that he was not provided with notice of the PEC meeting of May 6, 2009 or otherwise invited to attend such meeting, in purported violation of ORMC Medical Staff Bylaws. [JA 178, ¶¶ 93-96]. Bhanusali also alleges, upon information and belief, that the subject of the May 6, 2009 meeting was not the rotator cuff surgery but rather a patient operated on by Bhanusali months earlier who had had a total knee replacement surgery. [JA 178, ¶ 95]. By letter, dated May 11, 2009,

Bhanusali alleges that he was informed that the PEC determined that Bhanusali would now be required to be assisted on a list of specified surgeries, thereby limiting his surgical privileges. [JA 177-88, ¶ 92].

On May 28, 2009 Bhanusali was purportedly provided a letter which stated: "Based on our discussion of your focused review you are expected to present cases to the Chair or Vice Chair of Orthopedics prior to booking any case that was on the assistant required list (sent under separate letter). The Chair or Vice Chair has the right to proctor you for any case at their discretion." [JA 178 ¶ 97]. Allegedly after clarification, in a letter, dated June 5, 2009, Bhanusali practiced within the restrictions outlined in the letter. [JA 178, ¶ 99].

On October 6, 2009, a meeting of the Medical Executive Committee ("MEC") was held at which the MEC confirmed Bhanusali's "precautionary suspension." [JA 179, ¶ 100]. Eight of the twelve physicians present at the MEC meeting were purportedly affiliated with Crystal Run. [JA 179, ¶ 101]. A five-member Ad Hoc Committee, which included one physician purportedly affiliated with Crystal Run, was also formed to investigate the allegations forming the basis of Bhanusali's precautionary suspension, and the committee thereafter reviewed six of Bhanusali's cases, none of which, Bhanusali alleges, involved a patient having an unsatisfactory outcome. [JA 179-180, ¶ 102-104, 108]. The Ad Hoc Committee subsequently convened on October 13, 2009 and met with Bhanusali.

[JA 180, ¶ 110]. The Ad Hoc Committee recommended that Bhanusali be given a written censure, that the suspension be terminated, but that certain limitations be placed upon Bhanusali's surgical privileges. [JA 180, ¶ 110]. According to the TAC, on October 27, 2009 following a further meeting with Bhanusali, the MEC recommended revocation of all Bhanusali's medical staff privileges and membership on the medical staff. [JA 180, ¶ 111]. Twelve of the twenty-four physicians present at the MEC meeting were purportedly affiliated with Crystal Run. [JA 180, ¶ 112].

Bhanusali requested an additional review, pursuant to Article 11 of the ORMC Medical Staff Bylaws, of the MEC's decision of October 27, 2009 and a second Ad Hoc Committee was formed. [JA 180, ¶ 113]. Two of the five members of the second Ad Hoc committee were purportedly affiliated with Crystal Run. [JA 181, ¶ 114). The second Ad Hoc Committee issued a report on June 30, 2010 allegedly imposing severe restrictions on Bhanusali's continued privileges at ORMC which, among other things, prescribed the types of procedures that Bhanusali could perform, required Bhanusali during surgeries to arrange for and have assistance from fully credentialed ORMC physicians, and required certain approvals and reviews of procedures. [JA 181, ¶ 115-116].

By letter, dated November 18, 2010, Bhanusali was notified that after his final appeal ORMC's Executive Committee, on behalf of its Board of Directors,

- 10 -

affirmed the findings of the Ad Hoc Committee of June 30, 2010, as adopted by the MEC. [JA 181, ¶ 117].  Bhanusali alleges that his suspension, as modified by the MEC on June 30, 2010, imposed terms and conditions on Bhanusali that render it economically and professionally impossible for him to perform his duties as an orthopedic surgeon.  [JA 181, ¶ 118].  Bhanusali also alleges that the restrictions placed on Bhanusali's privileges at ORMC were improperly communicated to the Chief of Surgery at St. Anthony's Hospital by ORMC staff, thereby resulting in similar restrictions on Bhanusali, which purportedly severely compromise his ability to perform major orthopedic surgery in Orange County. [JA 182,  ¶¶ 121-122].

## 1. Discrimination Claims

Bhanusali alleges that the defendants-appellees subjected him to a "sham peer review" and restricted Bhanusali's privileges as part of a conspiracy to discriminate against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), his race, national original, and/or ethnicity in violation of the New York Executive Law ("NYSHRL"), Title VII of the Civil Rights Act ("Title VII"), and 42 U.S.C. Sections 1981 and 1985.  In support of Bhanusali's discrimination claims, the TAC alleges that no other surgeon on the ORMC staff currently had similar limitations placed on their privileges as Bhanusali had placed upon him. [JA 181, ¶ 119].  The TAC alleges

that purportedly similarly situated younger, white physicians were not subjected to peer review and were treated more favorably than Bhanusali. [JA 182-183, ¶¶ 126-130]. The TAC provided examples of alleged incidents which purportedly involved younger, white physicians for which no discipline was imposed: (i) a death following laparoscopic cholecystectomy; (ii) accidentally pulling out a patient's ureter during a cystoscopy; (iii) total nephrectomy allegedly without medical indication for the action; (iv) surgery on a wrong ureter; (v) drill bit to the bone of the skull during sinus surgery causing brain damage; (vi) perforation of a patient's spleen and colon during a colonoscopy; (vii) rupturing of a patient's bowel while performing a laparoscopy; (viii) a physician reporting to work drunk; (ix) punctured esophagus during an endoscopy; (x) failure of a physician to see hip-replacement patient post-operatively; and (xi) physician caught having sex with a nurse in the ICU. [JA 184-185, ¶¶ 134-144]. The TAC also alleges that a white physician of Belgian descent allegedly maintained staff privileges at ORMC despite having a $3.8 million dollar verdict against him for "a hip replacement surgery gone badly." [JA 186, ¶ 145]. The TAC does not allege when these alleged incidents took place, or specific factual allegations concerning the physicians involved, including their complete ages, races or national origins.

Bhanusali also alleges that two doctors of Indian descent have been subjected to sham peer review. In 2007, a physician of Indian descent allegedly

had certain of his cases reviewed in which patients had experienced complications not uncommonly experienced by patients of white physicians who purportedly were not subject to review. The Indian physician's cases were sent to a physician at another hospital for review [JA 186, ¶¶ 146-152]. In 2000-2001 a physician of Indian descent allegedly disagreed with a white emergency room physician regarding a patient's treatment, and the Indian physician was allegedly reprimanded and criticized by the then Chief of Medical Staff while the white emergency room physician was not investigated. [JA 187, ¶¶ 153-155]. Bhanusali further alleges that the Ad Hoc Committee, the PEC and the MEC were comprised entirely of white non-Asian physicians and that the committees that reviewed Bhanusali were comprised almost entirely of a majority of physicians who were younger than Bhanusali. [JA 187-188, ¶¶ 157-158]. Finally, Bhanusali alleges that the medical staff by-laws do not include an express policy against discrimination. [JA 188, ¶¶ 159-160].

### 2. Antitrust Claims

The TAC alleges that the "sham peer review" and restrictions on Bhanusali's surgical privileges violated federal and state antitrust laws, specifically 15 U.S.C. Section 1 (The Sherman Act) and New York General Business Law Section 340. Although Bhanusali identifies the "relevant market" as Orange County, New York and the surrounding areas, including parts of New Jersey and Eastern

Pennsylvania, the TAC states that the action involves "the provision of these services in the Town of Middletown, New York and its immediate vicinity." [JA 171, ¶¶ 53-54]. Bhanusali alleges that the practice of orthopedic surgery in the Orange County region is "inherently interstate" and that Bhanusali's practice had been interstate by virtue of his treatment of patients from New Jersey and Eastern Pennsylvania. [JA 171, ¶¶ 55-57]. The TAC alleges that a significant percentage of the physicians with medical staff privileges at ORMC are affiliated in some manner with defendant-appellee Crystal Run, that nine of the seventeen orthopedic surgeons listed on ORMC's website are affiliated with defendant-appellee Crystal Run, and that orthopedic surgeons with supervisory responsibilities affiliated with Crystal Run include defendants-appellees Kevin Trapp, Christopher Inzerillo and Gregory Spencer. [JA 173, ¶¶ 67-68]. Bhanusali alleges that defendant-appellee Hal Teitelbaum, Chairman and CEO of Crystal Run, has informed physicians at ORMC that unless they become affiliated with Crystal Run, they will not be able to practice at ORMC or anywhere in Orange County. [JA 174, ¶ 72]. Bhanusali alleges that his medical practice and his clinic were in direct competition with Crystal Run in the relevant market for the provision of orthopedic surgical services. [JA 174, ¶ 73].

Bhanusali also alleges that the defendants-appellees conspired to subject him to a "sham peer review" to drive him, a competitor, from the market for orthopedic

surgical services. [JA 174-175, 199, ¶¶ 74-78; 233-234]. Bhanusali further alleges that the "sham peer review" was purportedly used to "blackball" Bhanusali from practicing orthopedic surgery by entering his name in the National Registry. [JA 199-200, ¶¶ 234-235]. Bhanusali conclusively alleges that the purported conspiracy to remove him as a competitor had the following effects: (i) limited patient choice of orthopedic surgeons including those willing to provide services to indigent patients lacking insurance; (ii) limited the quality of care available to Bhanusali's patients by forcing them to change physicians; (iii) limited quality of care by preventing other physicians from referring patients to Bhanusali; (iv) drove up the price for orthopedic surgical procedures by eliminating Bhanusali and his clinic as a competitor; and (v) had an overall chilling effect on competition from other potential competitors. [JA 200, ¶ 237].

### 3. The District Court's Order Dismissing the TAC[5]

#### (i) Dismissal of Discrimination Claims.

In its Order, dated August 12, 2013, the District Court held that the TAC failed to plausibly allege an inference of discrimination and, as a result, it dismissed Bhanusali's discrimination claims pursuant to Section 1981, Section

---

[5] The District Court denied leave to replead noting, among other things, that "Plaintiffs have not requested leave to file a Fourth Amended Complaint or suggested that they are in possession of facts that would cure the deficiencies identified in this opinion. Indeed, their failure to include additional facts in the TAC sufficient to address the discrimination claims, after the issues were identified in my previous ruling, suggests they are not in possession of any such facts." [JA 235-236]. Bhanusali does not appear to have appealed this aspect of the district court's decision as it is not addressed in Bhanusali's brief.

1985, the ADEA, NYSHRL, and Title VII. Specifically, the District Court held that mere allegations that the decision makers were white and/or younger were insufficient to raise an inference of discrimination. [JA 223]. Although Bhanusali purported to allege "similarly situated" comparators, an inference of discrimination did not arise because: (i) Bhanusali's general allegations that "misconduct by "younger and/or white physicians" went without peer review or discipline were wholly conclusory and (ii) when Bhanusali referred to specific alleged comparators Bhanusali failed to allege facts to demonstrate that the purported comparators were "similarly situated in all material respects" to Bhanusali. [JA 224-226].

The District Court noted that Bhanusali failed to allege the details of three or four of the six incidents of medical misconduct for which Bhanusali was disciplined, and thus a meaningful comparison to others was "impossible." [JA 225]. The District Court further noted that for all but one of the purported comparators, Bhanusali alleged only one incident of medical misconduct, whereas Bhanusali was disciplined only after six incidents of medical misconduct. [JA 225]. Moreover, the District Court noted that Bhanusali alleged no facts regarding the level of experience of the purported comparators as compared to him, and it also noted that only one of the purported comparators was an orthopedic surgeon. [JA 225-226]. Finally, the District Court held that Bhanusali's allegations concerning other doctors of Indian descent did not sufficiently allege an inference

of discrimination because they were either wholly conclusory and/or too remote in time to Bhanusali's alleged discriminatory treatment. [JA 226-227].

As a result, the District Court correctly stated that it was unable to conclude that "plaintiffs have plausibly alleged facts supporting the inference that Dr. Bhanusali was discriminated against on the basis of his race, national origin, or age." [JA 227].

### (ii) Dismissal of Antitrust Claims.

The District Court also correctly dismissed the antitrust claims in the TAC under both federal and state law. Bhanusali's antitrust claims pursuant to New York General Business Law Section 340 were dismissed because that statute does not apply to physicians.[6] [JA 228-229]. The District Court, after a careful and lengthy analysis of antritrust law, also dismissed Bhanusali's federal antitrust claims because the TAC: (i) failed to allege sufficiently "*how* the [Defendant's actions] caused harm to competition in the market, rather than the competitors themselves;" (ii) failed to allege sufficiently "in what way they 'injured the competitive structure of the market;'" and (iii) failed to allege sufficiently "'the factual connection between the alleged market effects and [Defendants' actions].'" [JA 232] (emphasis in original). Thus, Bhanusali lacked the requisite antitrust standing to maintain his federal antitrust claim.

---

[6] Bhanusali does not appear to appeal this portion of the district court's ruling and, indeed, he did not oppose dismissal of that claim before the district court.

The District Court also noted that the TAC's allegations concerning limited patient choice based on the removal of one orthopedic surgeon from the "unstated number in the relevant market" was wholly conclusory, especially given the large geographic area that the TAC defined as the relevant market and the absence of factual allegations concerning the services that remained in the relevant market after Bhanusali was disciplined. [JA 232]. The District Court noted in particular that Bhanusali did not even allege that patients can no longer receive the kinds of services Bhanusali provided, and that "there are surely other options for patients. . . – it is not plausible that such choice would be so limited as to render patients in the relevant market unable to access similar services." [JA 233]. Moreover, as to any alleged limitation on quality of care, the District Court noted that "Bhanusali is not alleged to be a particular specialist whose quality is so superior to anyone else's in the relevant geographic area as to render it plausible that patients are *actually* unable to receive quality care elsewhere." [JA 233](emphasis in original). Finally, the District Court held that the TAC's "conclusory allegation (unsupported by a single fact or example) that the price of orthopedic surgical services has increased by the elimination of a *single* orthopedic surgeon from the relevant market is likewise implausible . . ." [JA 233-234](emphasis in original). The District Court also noted that "[a]t best, even if defendants' conduct was designed to drive Dr. Bhanusali out of the relevant market, . . . the only injury alleged in the TAC is

injury to [p]laintiffs' business." [JA 234]. As a result, the District Court concluded that Bhanusali failed to plausibly allege an antitrust injury and, as result, he lacked antitrust standing.[7] [JA 234].

## ARGUMENT

## <u>STANDARD OF REVIEW</u>

When reviewing a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6) the court "accepts all factual allegations as true and draws every reasonable inference from those facts in the plaintiff's favor," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Mayor & Council of Baltimore v. Citigroup, Inc.</u>, 709 F.3d 129, 135 (2d Cir. 2013) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To survive dismissal, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 135 (quoting <u>Twombly</u>, 550 U.S. at 570). The court should give "no effect at all to 'legal conclusions couched as factual allegations.'" Id. at 135 (quoting <u>Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007).

---

[7] The district court also held that even if the TAC had plausibly alleged antitrust standing, it would likely still dismiss the federal antitrust claims for its failure to plausibly allege that there was an agreement among the defendants "to oust Dr. Bhanusali from the market." [JA 234, fn. 16].

## POINT I

## THE DISTRICT COURT CORRECTLY DISMISSED BHANUSALI'S ANTITRUST CLAIMS

**A.      The District Court Properly Determined That the TAC Did Not Contain Facts To Plausibly Allege Antitrust Standing.**

When reviewing a claim for an alleged antitrust violation on a 12(b)(6) motion to dismiss, a court must first determine whether the plaintiff "suffered an antitrust injury" such that he has "standing to enforce the antitrust laws." Piccone v. Board of Dirs. of Doctors Hosp. of Staten Island, Inc., No. 97 Civ 8182, 2000 WL 1219391, at *3-5 (S.D.N.Y. Aug. 25, 2000) (citations omitted).  A plaintiff will not be found to have "suffered an antitrust injury" unless he "demonstrate[s], as a threshold matter, that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." Id. at *3 (emphasis added) (citing George Haug Co. v. Rolls Royce Motor Cars Inc., 148 F.3d 136, 139 (2d Cir. 1998) (internal quotation marks and citation omitted).  Thus, "[a] plaintiff doctor" will not establish standing and "may not survive a motion to dismiss by making sweeping assertions about the impact [his] exclusion from the marketplace will have on competition generally." Salamon v. Our Lady of Victory Hosp., No. 99-CV-0048E(H), 1999 WL 955513 (W.D.N.Y. Oct. 5, 1999) (citations omitted); Balaklaw v. Lovell, 14 F.3d 793, 798, 802 (2d Cir. 1994) (affirming dismissal of

antitrust claim based on lack of antitrust standing because the "claimed injury came as a result of [plaintiff anesthesiologist] losing out in the competition for an exclusive anesthesiology contract . . . , and nothing more" and thus the plaintiff's "factual allegations . . . establish only that he has been harmed as an individual competitor.").

As the District Court correctly noted, the United States Supreme Court has emphasized that "[t]he antitrust laws ... were enacted for 'the protection of competition, not competitors.'" <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 488 (1977) (internal quotation marks and citation omitted); <u>Balaklaw v. Lovell</u>, 14 F.3d at 797. Thus, to avoid dismissal based on a lack of standing, it is insufficient for a physician alleging antitrust violations to demonstrate merely that he was harmed as a result of a defendant's actions, in which case there would be no violation of the antitrust laws, but rather he must sufficiently allege that consumers of the medical services offered by the physician and defendant hospital were harmed. <u>See</u> <u>Guinn v. Mount Carmel Health</u>, No. 2:09-CV-226, 2012 WL 628519 (S.D. Ohio Feb. 27, 2012) (citing <u>Aventis Envtl. Sci. USA LP v. Scotts Co.</u>, 383 F. Supp. 2d 488, 503 (S.D.N.Y. 2005) (Even "if AgrEvo EH was harmed as a result of Scotts' and Monsanto's actions but NSH consumers suffered no ill effects . . . there would be no violation of the antitrust laws."). A plaintiff must put forth factual allegations plausibly suggesting that there has been an adverse effect on

prices, output, or quality of goods in the relevant market as a result of the challenged actions. <u>Guinn</u>, 2012 WL 628519 (citing <u>Jefferson Parish Hosp. Dist. No. 2 v. Hyde</u>, 466 U.S. 2, 31 (1984).

In <u>Piccone</u>, 2000 WL 1219391, a physician alleged antitrust violations against a defendant hospital arising out of the termination of his medical staff privileges.   The Court granted the defendant's 12(b)(6) motion to dismiss the plaintiff's antitrust claims in determining that the plaintiff lacked antitrust standing. As to the insufficiency of plaintiff's allegations, the Court stated:

> Here, Piccone fails to plead the requisite antitrust injury because he alleges injury only to himself as a competitor and does not make specific factual allegations concerning any injury to competition in the market.   Pointing specifically to the disciplinary action taken against him by the hospital, his theory, at bottom, is that his 'summary discharge…was a concerted subterfuge and sham designed to harass and exclude [him] as an effective competitor in the marketplace in addition to excluding him from an effective exercise of his rights as a shareholder and a member of the medical staff.… 'Piccone charges that defendants' actions 'proximately caused [him] to lose significant income which was thereby diverted to defendants and others'…and, in particular, harmed him as a competitor of defendant Dr. Rose in pacemaker implantation.…The effect, according to Piccone, was to "destroy[]" his ability to work in his specialized professional field.
>
> *   *   *
>
> Were Piccone's theory viable, virtually any disciplinary action taken against any provider in any market would support an antitrust action because removal of a competitor from the market necessarily would 'hurt competition.'   But, in fact, similar disciplinary actions, including those involving hospital peer reviews, have withstood antitrust challenges where plaintiffs have failed to show injury to more than a single doctor's ability to

> practice at a particular hospital. <u>See</u>, <u>e.g.</u>, <u>Oksanen v. Page Mem'l</u>
> <u>Hosp.</u>, 945 F.2d 696, 708 (4th Cir. 1991) (en banc) ("the fact that
> a hospital's decision caused a disappointed physician to practice
> medicine elsewhere does not of itself constitute an antitrust
> injury"); <u>Mathews v. Lancaster Gen. Hosp.</u>, 883 F. Supp. 1016,
> 1045 (E.D. Pa. 1995) ("despite [the plaintiff's] attempts to couch
> it in terms of an injury to competition, the harm alleged…is
> essentially harm to himself only"), <u>aff'd</u>, 87 F.3d 624 (3d Cir.
> 1996); <u>see</u> <u>generally</u> <u>Jefferson Parish Hosp. Dist. No. 2 v. Hyde</u>,
> 466 U.S. 2, 30, 80 L. Ed. 2d 2, 104 S. Ct. 1551 (1984)
> (recognizing a hospital's "unquestioned right to exercise some
> control over the identity and the number of doctors to whom it
> accords staff privileges"); <u>Wagner v. Magellan Health Servs.</u>,
> <u>Inc.</u>, 121 F. Supp. 2d 673, 2000 U.S. Dist. LEXIS 8729, 2000 WL
> 804692, at *5 (N.D. Ill. 2000) (collecting cases holding no
> antitrust injury where physician denied medical privileges).
> Indeed, as the Fourth Circuit pointed out in <u>Oksanen</u>, the presence
> of peer reviews can enhance competition, rather than hurt it, by
> providing a way to monitor and evaluate the quality of doctors'
> care and their ability to work well with others. <u>See</u> 945 F.2d at
> 709.

<u>Id.</u> at *3-4. Finally, the Court in <u>Piccone</u> noted that the plaintiff's allegations that

the defendants "'deprive[d] many individual patients and referring physicians of

access to [Piccone's] services for a substantial period of time' does not cure the

deficiency because even if Piccone had alleged a conspiracy to shut him out

completely, that would not necessarily constitute an antitrust violation in the

absence of an anticompetitive effect on the industry as a whole." <u>Id.</u> at *4.

Bhanusali's allegations of a purported antitrust injury, like the allegations

rejected by the Court in <u>Piccone</u>, are insufficient to establish harm to patients or

market-wide competition. Bhanusali alleges that the temporary suspension of, and

the restriction placed on, his surgical privileges through an alleged "conspiracy to remove him as a competitor": (i) limited patient choice of orthopedic surgeons including those willing to provide services to indigent patients lacking insurance; (ii) limited the quality of care available to Bhanusali's patients by forcing them to change physicians; (iii) limited the quality of care by preventing other physicians from referring patients to Bhanusali; (iv) drove up the price for orthopedic surgical procedures by eliminating Bhanusali and his clinic as a competitor; and (v) chilled overall competition from other potential competitors. [JA 200, ¶ 237). As noted by the District Court, however, Bhanusali failed to allege any facts to support any of these conclusory allegations.

In <u>Salamon</u>, 1999 WL 955513, the defendant hospital had imposed mentoring and educational requirements upon a physician who had repeatedly complained that her direct supervisor made a number of unwelcome sexual advances towards her. The Court dismissed the antitrust claims, finding that the plaintiff's allegations that (i) the defendants' behavior "increase[d] the cost to the public of obtaining gastroenterological services and denie[d] the public access to the only female gastroenterologist in the area," and (ii) "her elimination from the 'gastroenterological services industry in the Buffalo Southtowns area, which includes Pennsylvania, result[ed] in a substantial portion of the relevant market [being] foreclosed to the public,'" were insufficient to establish that plaintiff had

suffered an antitrust injury and, therefore, insufficient to establish that plaintiff had antitrust standing. Id. at *3. The Court held that those allegations "without more, serve to establish only that 'the public' is being denied access to her, not to gastroenterological services at [defendant hospital] or elsewhere in the Southtowns area. A plaintiff doctor may not survive a motion to dismiss by making sweeping assertions about the impact her exclusion from the marketplace will have on competition generally." Id. See also Korshin v. Benedictine Hosp., 34 F. Supp. 2d 133, 137 (N.D.N.Y. 1999) (granting motion to dismiss anesthesiologist's antitrust claims based on lack of antitrust standing because plaintiff alleged injury to himself and his own business but did not adequately allege impact on market-wide competition).

The TAC does contain any more allegations than those contained in Salamon and other the cases in which the complaints of single physicians were dismissed. The conclusory allegations of Bhanusali that patients could no longer choose him as a physician, that patients could no longer be referred to him by other physicians, that the price for orthopedic surgical procedures were driven up, or that there was an overall chilling effect on competition, does not establish antitrust injury. See, e.g., Salamon, 1999 WL 955513, at *3; Piccone, 2000 WL 1219391, at *4 ("Piccone does not allege that the surgery services he performed at the hospital are no longer available to its patients.") There are no facts in the TAC to

demonstrate that patients could not find other orthopedic surgeons in the tri-state area. There are also no facts alleged with respect to the alleged increase in price of orthopedic surgical procedure.

Recent decisions from courts outside this circuit are in accord. In Guinn, 2012 WL 628519, the Court granted the defendant hospital's motion to dismiss a physician's Sherman Act antitrust claims concerning a purported sham peer review process and the suspension of his medical staff privileges because the plaintiff lacked antitrust standing. Id. at *7. The Court determined that plaintiff, a physician specializing in electrophysiology and cardiac care, did not provide specific facts indicating that patients in the relevant geographic area were required to pay higher costs for services because of the plaintiff's removal as a provider. Id. With respect to the quality of medical services, the Court held that plaintiff's allegations that quality of medical services was harmed because his patients could no longer use his services was insufficient because the patients still had a choice to see other physicians and, as a result, the injury to the patients "did nothing to reduce competition in the market." Id. at *6. See also Frantzides v. Northshore Univ. Healthsystem Faculty Practice Assocs., 787 F. Supp. 2d 725, 732 (N.D. Ill. 2011) (no antitrust injury where no allegations that conspiracy "resulted in any decrease in laparoscopic surgery services available to consumers"). The same result should obtain herein. Bhanusali has not alleged any facts concerning an

increase in price of surgical services in the relevant geographic area because of the restrictions placed on him, or that his patients could not use the services of other orthopedic surgeons in the area.

Similarly, in Zoellner v. St. Lukes Regional Med. Center, Ltd., No. 1:11-CV-00382, 2012 WL 2326070 (D. Idaho June 19, 2012), the Court dismissed federal and state antitrust claims of an anesthesiologist, who was allegedly forced to resign, based on lack of antitrust standing. The Court determined that the plaintiff did not allege sufficiently that his forced resignation reduced competition in the marketplace or that his elimination from the marketplace injured competition generally, i.e., that the defendant gained an anti-competitive advantage by forcing his resignation. Id. at *3-4. The Court also rejected, as insufficient to allege antitrust injury, the plaintiff's allegations that consumers were forced to endure lower quality services in his absence – the surgeries scheduled in an unsafe manner as alleged by plaintiff -  because a decline in quality alone was insufficient to confer standing and the plaintiff did not allege market-wide decline in quality of services after his forced resignation. Id. at *4. See also Pierson v. Orlando Regional Healthcare  Sys., 619 F. Supp. 2d 1260 (M.D. Fla. 2009) (granting defendant's 12(b)(6) motion to dismiss antitrust claims brought by orthopedic surgeon, whose emergency room and trauma call privileges were indefinitely suspended as a result of an alleged sham peer review, because plaintiff did not

have antitrust standing).  Again, Bhanusali has not alleged any facts to demonstrate that his patients are now forced to endure lower quality services.

As these cases make clear, "the elimination of a single competitor, standing alone, does not prove anticompetitive effect" sufficient to confer antitrust standing. Guinn, 2012 WL 628519 (collecting cases); see also Balaklaw, 14 F.3d at 798; Piccone, 2000 WL 1219391, at *3-4; Salamon, 1999 WL 955513, at *3.  That is all that Bhanusali has alleged, i.e., the restrictions placed on him has allegedly eliminated him from the market, thereby purportedly causing an antitrust injury.

The TAC also fails to allege an antitrust injury because Bhanusali's surgical privileges were only temporarily suspended, and while restrictions were placed on Bhanusali's surgical privileges which limited him to certain procedures and/or required certain approvals, Bhanusali has continued to be able to treat patients at ORMC.  See Pierson v. Orlando Regional Healthcare  Sys., 619 F. Supp. 2d 1260 (M.D. Fla. 2009), aff'd, 451 Fed. Appx. 862 (11th Cir. 2012) (no antitrust standing where although certain privileges were removed (on-call list and trauma) because physician otherwise able to treat patients).

There is also no merit to Bhanusali's contention that the District Court overlooked the significance of the Court's decision in Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408 (2d Cir. 2005) since it does not support Bhanusali's antitrust claim.  In Daniel, the Court affirmed the dismissal of antitrust

claims for lack of standing and failure to assert antitrust injury brought by 175 named plaintiffs and 14,000 members of the proposed class of physicians against twenty-eight hospitals and other entities. The Court held that the plaintiffs' failed to allege antitrust injury because in that case the physicians sought only "super-competitive pay." The Daniel holding is not contrary to the District Court's decision, and there are numerous other decisions, before and after Daniel, which have held that a single physician failed to allege antitrust injury even when not seeking "super-competitive pay."

The cases relied upon by Bhanusali are inapposite. In New York MedScan LLC v. New York Univ. Sch. of Med., 430 F. Supp. 2d 140 (S.D.N.Y. 2006), a radiologist and a company which provided diagnostic imaging services alleged antitrust injuries arising from, among other things, their exclusion from exclusive contracting arrangements. The case did not involve a single physician alleging that he was excluded from the market based on a sham peer review. Moreover, in denying the defendants' motion to dismiss, the Court in New York Medscan LLC specifically noted the sufficiency of the allegations concerning antitrust injury which included allegations concerning the defendants' dominant share of the relevant market, specific factual allegations supporting the plaintiffs' claims that the quality of diagnostic imaging services decreased, and specific factual allegations concerning the use of different imaging devices as a result of the

alleged antitrust conspiracy and the resultant adverse impact on patients. 430 F. Supp. 2d at 147-148. Bhanusali makes no similar factual allegations. Similarly, in Mahmud v. Kaufman, 454 F. Supp. 2d 150 (S.D.N.Y. 2006), on reconsideration 496 F. Supp. 2d 266 (S.D.N.Y. 2007), the plaintiff physician alleged antitrust violation based on the nonrenewal of an affiliation contract and the complaint specifically alleged that the defendant hospital administrators had unlawfully conspired to injure not only plaintiff's business and practices, but "to physicians generally in the Port Jervis area specializing in cardiology, oncology and gastroenterology, as well as to patients in that area by severely limiting their choice of competing providers." Mahmud, 496 F. Supp. 2d at 275 n.9; 454 F. Supp. 2d at 160. Thus, although the Court in Mahmud denied the defendants' motion to dismiss the antitrust claims, the Court stated that it was "notable" for the antitrust injury analysis that the complaint did not merely allege harm to the plaintiff physician but that it alleged harm to others physicians in the market. Mahmud, 496 F. Supp. 2d at 275 n.9. In contrast, Bhanusali only alleges harm to himself.

Certain of the cases cited by Bhanusali did not involve a motion to dismiss or the applicable pleading standards. In Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 274-275 (3rd Cir. 1999), the Third Circuit reversed the lower court's grant of summary judgment and allowed a physician's antitrust claims to survive, but noted that the plaintiff asserted facts indicating that he was harmed by a

conspiracy with an illegal anticompetitive intent. See also Boczar v. Manatee Hospitals & Health Sys., Inc., 993 F.2d 1514, 1519 (11th Cir. 1993) (vacating orders of the district court which granted judgment notwithstanding the verdict on physician's antitrust claims based on the evidence adduced at trial that that the hospital conspired with others to restrain her practice of medicine). The issue herein is whether the TAC contains to satisfy the pleading requirements.

Even in those cases cited by Bhanusali in which a physician's antitrust claims survived a motion to dismiss, the cases are factually different. See Perinatal Med. Group, Inc. v. Children's Hosp. Cent. Cal., No. CV 09-1273, 2010 WL 1525511 (E.D. Cal. Apr. 15, 2010) (involved allegations of a purported vertical agreement between a hospital and specialty group of physicians, that requires every patient treated at the hospital to use the services of that firm of physicians); Nilavar v. Mercy Health Sys. W. Ohio, 142 F. Supp. 2d 859, 874-876 (S.D. Ohio 2000) (involved allegations concerning an exclusive contract). In Cohlmia v. Ardent Health Services, 448 F. Supp. 2d 1253, 1263-1264 (N.D. Ok. 2006), a doctor and surgical care center's allegations that the defendants violated antitrust laws by forcing patients to use their approved surgeons survived a motion to dismiss where the plaintiffs specifically alleged that they:

> served a significant percentage of the cardiovascular, thoracic, vascular and endovascular surgery patients in the relevant market, . . . a significant portion of their patients are Native American. Dr. Cohlmia possesses the

> skill, expertise, and willingness to operate on high risk
> patients. Native American patients are often considered
> to be high risk, and therefore are not always well
> received by other cardiovascular surgeons and health care
> facilities. . . Dr. Cohlmia treated a substantial percentage
> of his patients at Defendant hospitals; . . . [b]ecause of
> Plaintiffs' relative market share, Defendants perceived
> Dr. Cohlmia as a significant economic competitor and a
> threat to certain of their actual and desired market share.
> Further, Dr. Cohlmia was involved in the development of
> a specialty heart and vascular hospital, which facility
> Plaintiffs believe was also perceived as a threat by
> Defendants.

Id. at 1260-1261. Unlike the facts alleged in Cohlmia, Bhanusali's allegations do

not contain factual allegations sufficient to support an antitrust injury. The facts of

Piccone, in which the Court granted, pursuant to 12(b)(6), a motion to dismiss the

federal antitrust claims brought by a physician against a defendant hospital arising

out of the termination of his privileges, are substantially similar to this action.

Although Bhanusali also cites to the Third Circuit opinion in Brader v.

Allegheny Gen. Hosp., 64 F.3d 869 (3d Cir. 1995), in which an antitrust claim

brought by a physician survived a motion to dismiss, the Court in Brader itself

noted that there was authority to the contrary, citing the Seventh Circuit's decision

in BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n, 36 F.3d 664,

667 (7th Cir. 1994). Brader, 64 F.3d at 877. In BCB Anesthesia Care, Ltd., the

plaintiffs were certified registered nurse anesthetists who alleged that the defendant

hospital's decision to terminate a contract with them in favor of using a physician

anesthesiologist for anesthesia services was an antitrust violation. The Seventh Circuit observed that the case before it involved "one hospital's decisions about staff privileges and staffing patterns" and after citing to twenty-eight (28) decisions from courts around the country, including <u>Balaklaw v. Lovell</u>, 14 F.3d 793, 798 (2d Cir. 1994), the Court further observed that those courts "almost always come to the same conclusion: the staffing decision  at a single hospital was not a violation of section 1 of the Sherman Act." 36 F.3d at 667-668. The Seventh Circuit affirmed the  lower court's dismissal of the antitrust claims because the plaintiffs failed to allege sufficiently that the staffing decision at a single hospital had an impact on competition within the relevant market. <u>Id.</u>  Thus, to the extent <u>Brader</u> holds to the contrary, it appears to be an outlier.

Bhanusali's conclusory allegations concerning the alleged effects of the temporary suspension of, and the restrictions placed on, Bhanusali's medical privileges, fail to establish antitrust injury. As result, the District Court properly dismissed Bhanusali's federal antitrust cause of action.

## B.    The TAC Failed to Plausibly Allege an Antitrust Conspiracy.

The District Court also properly noted that even if the TAC had sufficiently pled antitrust injury, the District Court would likely have dismissed the TAC's federal antitrust claim for failure to sufficiently allege a conspiracy. To withstand a motion to dismiss, "[a] plaintiff in a Sherman Antitrust Conspiracy claim must

allege: (1) concerted action; (2) by two or more persons; (3) that unreasonably restrains interstate or foreign trade or commerce." In re Nasdaq Mkt.-Makers Antitrust Litig., 894 F. Supp. 703, 710 (S.D.N.Y. 1995). A complaint alleging an antitrust conspiracy under Section 1 of the Sherman Act must allege sufficient facts to support a "plausible," and not merely "conceivable," claim for relief. Bell Atlantic Corp. v. Twombley, 550 U.S. 544 (2007). Mere conclusory allegations of an agreement combined with parallel conduct are insufficient to satisfy the pleading requirements. Id. Conclusory allegations that a defendant conspired to violate federal and state antitrust laws cannot withstand a motion to dismiss. Id. See also Ashcroft v. Iqbol, 556 U.S. 662, 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory [allegations], do not suffice.").

Bhanusali alleges that the ORMC defendants-appellees and the remaining defendants-appellees, including Crystal Run and the individual defendants-appellees associated with Crystal Run, conspired to monopolize orthopedic services in Orange County and Sullivan County and to eliminate Bhanusali from the competition, through the use of a "sham peer review." Bhanusali further alleges that the defendants'-appellees' actions have harmed competition in the relevant market for orthopedic surgical services by purportedly limiting patient

choice and driving up medical costs. These are merely conclusory allegations without any supporting facts.

Moreover, individual ORMC defendants Lou Heimbach, Scott Batulis, Gerard Galarneau, and James Oxley cannot be part of the alleged conspiracy based on the intra-corporate conspiracy doctrine because their interests do not diverge from ORMC's, and they have no personal interest to remove them from the operation of this doctrine. See Solla v. Aetna Health Plans, Inc., 14 F. Supp. 2d 252 (E.D.N.Y. 1998) (discussing intra-enterprise conspiracy doctrine in Sherman Act cases; see also Johnson v. Nyack Hosp., 954 F. Supp. 717, 724-725 (S.D.N.Y. 1997); Purgess v. Sharrock, No. 91 CIV. 621, 1992 WL 349683 (S.D.N.Y. Nov. 9, 1992) (dismissing Sherman Act antitrust claims brought by anesthesiologist against hospital and physicians arising out of his termination for failure to allege a conspiracy where the physicians were acting in the scope of their authority with respect to the termination decision).

Bhanusali does nothing more than cite to Capital Imaging Assoc. P.C. v. Mohawk Valley Med. Assoc., Inc., 996 F.2d 537 (2d Cir. 1993), Johnson, 954 F. Supp. 2d at 724, and Mahmud v. Kaufman, 496 F. Supp. 2d 266, 278 (S.D.N.Y. 2007), for the proposition that where physicians participating in a peer review process have "private interests which diverge from those of the hospital or the physician who is the focus of the attention" the physicians can be legally capable

of conspiring.  <u>See</u>, <u>e.g.</u>, <u>Johnson</u>, 954 F. Supp. at 724.  In <u>Mahmud</u>, 496 F. Supp. 2d at 278, cited by Bhanusali, the plaintiff had specifically alleged, among other things, that the individual physicians participating in the alleged conspiracy all had private practices, among other things, in support of her allegations of an antitrust conspiracy.  Bhanusali does not even make similar minimal allegations, nor does the TAC allege that the individual ORMC defendants-appellees otherwise compete with Bhanusali.  Bhanusali fails to allege any facts concerning what "private interests" the ORMC defendants-appellees may have had that purportedly did not align with the hospital.  Thus, the TAC has not alleged sufficiently an antitrust conspiracy and the District Court's dismissal of Bhanusali's antitrust claims should be affirmed.

## POINT II

### THE DISTRICT COURT APPLIED THE CORRECT STANDARD IN DETERMINING THAT BHANUSALI FAILED TO ALLEGE A PLAUSIBLE INFERENCE OF DISCRIMINATION AND <u>PROPERLY DISMISSED BHANUSALI'S DISCRIMINATION CLAIMS</u>

**A.** **<u>Standard</u>**

In order to withstand a motion to dismiss in an employment discrimination case, a plaintiff's "claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."  <u>Barbosa v. Continuum Health Partners, Inc.</u>, 716 F. Supp. 2d 210, 214-215 (S.D.N.Y. 2010).  A plaintiff must set forth "factual circumstances from which discriminatory motivation for such action can

be inferred." <u>Mabry v. Neighborhood Defender Serv.</u>, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011). If a plaintiff "'ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed.'" <u>Muhammad v. Juicy Couture/Liz Claiborne, Inc.</u>, No. 09 Civ. 8978, 2010 WL 4032735, at *2 (S.D.N.Y. July 30, 2010) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

## B.   <u>The District Court Applied the Correct Standard.</u>

The Second Circuit has recently stated that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." <u>Hedges v. Town of Madison</u>, 456 Fed. Appx. 22, 23 (2d Cir. 2012). In reconciling <u>Twombly</u>, <u>Iqbal</u>, and <u>Swierkiewicz</u>, the Court in <u>Hedges</u> held that "at a minimum, employment discrimination claims must meet the standard of pleading set forth in <u>Twombly</u> and <u>Iqbal</u>, even if pleading a prima facie case is not required." <u>Hedges,</u> 456 Fed. Appx. at 23.

Courts in this circuit following <u>Hedges</u> have routinely held that in deciding a motion to dismiss pursuant to Rule 12(b)(6):

> [a]lthough plaintiffs alleging employment discrimination need not plead a prima facie case, the elements of a prima facie case do 'provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief <u>plausible</u>. (emphasis supplied).

*Trachtenberg v. Dept. of Educ. Of City of New York*, 937 F. Supp. 2d 460 (S.D.N.Y. 2013). See also *McManamon v. Shinseki*, No. 11 Civ. 7610, 2013 WL 3466863 (S.D.N.Y. July 10, 2013); *Kassman v. KPMG, LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013); *Giraud v. Bd. of Educ.*, No. 12-CV-1842, 2013 WL 3776242 (S.D.N.Y. July 17, 2013); *Thompson v. New York City*, No. 12 Civ. 8034, 2013 WL 6409326 (S.D.N.Y. Dec. 9, 2013). Courts therefore "consider [prima facie case] elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." E.g., *Giraud v. Bd. of Educ.*, 2013 WL 3776242, at *5.

The District Court, citing *Hedges* and *Trachtenberg*, and in accordance with the district court decisions cited above, correctly noted that "[w]hether plaintiffs have plausibly alleged a prima facie case is an important tool at the motion to dismiss stage to assess the ultimate plausibility of Plaintiffs' claim for relief" and correctly determined that it would "look to whether Plaintiffs have alleged facts that would plausibly support an inference of discrimination." [JA 222].

## C. The District Court Correctly Held that Bhanusali Failed to Plausibly Allege an Inference of Discrimination.

No inference of discrimination will arise unless the individuals identified by a plaintiff as being outside his protected class and allegedly being treated more favorably are "similarly situated in all material respects." *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 226 (E.D.N.Y. 2010) (citations omitted). While

the circumstances of the alleged similarly situated employees "need not be identical," the Second Circuit "requires 'a reasonably close resemblance of facts and circumstances' . . . [and] an objectively identifiable basis for comparability." Risco v. McHugh, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012) (citations omitted); Lizardo v. Denny's Inc., 270 F.3d 94, 101 (2d Cir. 2001). Thus, "in addition to identifying similarly situated employees who are subject to the same performance evaluation and discipline standards, a plaintiff must also show that those employees engaged in acts of comparable seriousness but were not punished as severely as plaintiff." Risco, 868 F. Supp. 2d at 100; Ruiz v. County of Rockland, 609 F.3d 486 (2d Cir. 2010).

A proposed comparator is not similarly situated "in all material respects" unless it is alleged that he has engaged in all of the same misconduct as plaintiff, or at least committed the most serious of the infractions for which the plaintiff was subjected to an adverse employment action. Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., No. 09 Civ. 12, 2009 WL 3682458, at *8 (S.D.N.Y. Oct. 29, 2009) (dismissing discrimination claim under 12(b)(6) for failure to allege sufficiently similarly situated employees because the proposed comparator was not alleged to have engaged in conduct of "comparable seriousness," "[was] not alleged to have engaged 'in all of the same misconduct' as [p]laintiff and cannot be said to have been 'similarly situated in all material respects.'"); Stepheny v. Brooklyn Hebrew

Sch. For Special Children, 356 F. Supp. 2d 248, 260 (E.D.N.Y. 2005) ("'similarly situated' means the other employees 'must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it'"); Tomasino v. Mount Sinai Med. Ctr. & Hosp., No. 97 Civ. 5252, 2003 WL 1193726, at *14 (S.D.N.Y. Mar. 13, 2003) (proposed comparators were not similarly situated in all material respects to plaintiff, a nurse, because although some of the comparators "committed violations similar to those of [plaintiff] with respect to safeguarding the unused morphine and the documentation, none of them committed the most serious infractions for which plaintiff was discharged, i.e., medicating a patient with a controlled substance without a doctor's order.").

Contrary to Bhanusali's assertions, the District Court's consideration whether a plaintiff's allegations regarding the existence of similarly situated comparators supported a plausible inference of discrimination was entirely appropriate on a 12(b)(6) motion to dismiss.  See, e.g., Algarin v. City of New York, No. 12 Civ. 1264, 2012 WL 4824988, at *3 (S.D.N.Y. Oct. 10, 2012) (granting 12(b)(6) motion to dismiss discrimination claims noting that allegations of similarly situated persons failed to raise an plausible inference of discrimination even though "[p]laintiff identifies the other officers as subjects of charges arising from the same overtime abuse situation [as plaintiff], but neither specifies the

charges against the other officers nor alleges that any of the other officers had ICO responsibilities [who had] signed and approved their own overtime reports as well as inaccurate reports by other personnel"); Jenkins, 2009 WL 3682458, at *8 (dismissing discrimination claim under 12(b)(6) for failure to allege sufficiently similarly situated employees); Dean v. Westchester County District Attorney's Office, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) (dismissing discrimination claim under 12(b)(6) noting that "the mere fact that [plaintiff] believed white, male employees similarly situated were not disciplined for similar professional failures is not a sufficient basis to infer discrimination").

While the TAC alleges that other white and/or younger physicians, apparently with different specialties, different practices, and from different departments, performed a variety of procedures or other forms of patient care and were purportedly not subject to peer review or discipline, there are no factual allegations concerning the circumstances surrounding the incidents, e.g., whether each incident arose due to the physician's violation of hospital protocol or other rules, the nature of each procedure at issue, the level of difficulty associated with each procedure, or whether there were other mitigating factors. Without such facts there cannot be a meaningful comparison to the allegations of inadequate care attributed to Bhanusali. In addition, some of the allegations, on their face, are not remotely relevant, such as the allegation concerning a physician caught having

- 41 -

sexual intercourse with a nurse or a physician coming in drunk. Thus, the District Court correctly held, in this case, that Bhanusali's laundry list of other Caucasian and/or younger physicians who allegedly were not disciplined for a variety of acts failed to account for differentiating and mitigating factors, and failed to allege sufficiently persons "similarly situated in <u>all material</u> respects" to Bhanusali such that a plausible inference of discrimination could arise.

Moreover, the ORMC defendants'-appellees' peer review of Bhanusali, and the actions taken against him, were the result of the review of six cases in which Bhanusali provided inadequate patient care. On the other hand, the TAC alleges that all but one of the proposed white and/or younger comparators were involved in only one incident, and the remaining comparator was only involved in two incidents. The TAC also fails to allege any facts concerning the experience of the comparators. To be "similarly situated in all material respects," proposed comparators should have a "similar level of relevant experience." <u>See</u> <u>Lawless v. TWC Media Solutions, Inc.</u>, 487 Fed. Appx. 613, 616 (2d Cir. 2012); <u>Loucar v. Boston Mkt. Corp.</u>, 294 F. Supp. 2d 472, 479 (S.D.N.Y. 2003). Such factors are sufficiently differentiating to render the purported comparators not similarly situated to Bhanusali for purposes of his discrimination claims. <u>See</u> <u>Dean</u>, 119 F. Supp. 2d at 430 (dismissing discrimination claim under 12(b)(6) noting that "the mere fact that she believed white, male employees similarly situated were not

disciplined for similar professional failures is not a sufficient basis to infer discrimination); Jenkins, 2009 WL 3682458, at *8.

The decisions in Trachtenberg v. Dept. of Educ. of City of New York, 937 F. Supp. 2d 460 (S.D.N.Y. 2013) and Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000), do not undermine the District Court's holding and analysis of Bhanusali's allegations concerning "similarly situated" employees. In Trachtenberg, the Court noted that the plaintiff, a speech teacher alleging age discrimination, identified at least one speech teacher under 40 who was allegedly treated differently than the plaintiff, identified other teachers under 40 who were allegedly treated differently, and identified five teachers over 40 allegedly subjected to the same or similar mistreatment than plaintiff. 937 F. Supp. 2d at 471. The District Court determined in this case that Bhanusali failed to even identify one similarly situated orthopedic surgeon. In Graham, the Court considered the district court's granting of summary judgment to the employer and held that the district court improperly resolved factual issues concerning whether the alleged comparators were "similarly situated." 230 F.3d at 39. Graham did not discuss the sufficiency of allegations concerning "similarly situated" employees because the complaint was sufficient at the pleading stage and there was a question of fact on the summary judgment motion.

Finally, as the District Court correctly held below, no evidence of discrimination arises from Bhanusali's allegations concerning two other doctors of Indian descent who were purportedly subject to disparate treatment, one in 2000 or 2001 and the other allegedly in 2007. [JA 226]. With respect to Dr. Polpalle, the TAC does not allege the number of his cases that were reviewed, the nature of those cases, or the experience of Dr. Polpalle. [JA 186, 226]. With respect to Dr. Jhaveri, there are no allegations that he was even subject to a peer review or what his experience was, other than he "had served the hospital for many years." [JA 187]. More importantly, the incident involving Dr. Jhaveri purportedly occurred in 2000-2001, eight to nine years prior to the restriction of Bhanusali's privileges and thus has no temporal or factual similarity to plaintiff's claims. Bhanusali's claims that these two physicians of Indian descent were discriminated against, and that such acts prove he was discriminated against, are entirely speculative and conclusory and do not raise an inference of discrimination. See Murphy v. Board of Educ. of the Rochester City Sch. Dist., 273 F. Supp. 2d 292, 302 (W.D.N.Y. 2003) (noting that evidence of discrimination against others must bear a logical connection to the discrimination against the plaintiff and rejecting plaintiff's allegation about others being discriminated against because they "relate[d] to matters occurring in other places, at other times, sometimes years previously and involving matters wholly unrelated to the claims at issue."); Aiossa  v. Bank of

Am., N.A., No. 10-CV-1275, 2012 WL 4344183, at *2 (E.D.N.Y. Sept. 21, 2012) (incidents "too far removed in time" insufficient to "raise an inference of discrimination"). See also Santos v. Peralta Cmty. Coll. Dist., No. C-07-5227, 2009 WL 3809797, at *5 (N.D. Cal. Nov. 13, 2009) (evidence of discrimination against others is not relevant unless there is a nexus to the plaintiff's allegations and is "capable of being logically or reasonably tied to the discrimination against the plaintiff.").

In sum, Bhanusali failed to allege a plausible inference of discrimination and the District Court properly dismissed his discrimination causes of actions.

## POINT III

### EVEN IF THIS COURT WERE TO CONSIDER THE AMICI CURIAE BRIEF, THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED

The brief of the purported amici curiae Association of American Physicians and Surgeons, Inc. and the American Association of Physicians of Indian Origin (collectively the "Amici Curiae") in support of Bhanusali provide no basis to disturb the District Court's Order. The Amici Curiae assert that Bhanusali either stated an antitrust claim or should have been allowed to proceed to discovery. Neither claim has merit.

Although the Amici Curiae claim that Bhanusali has alleged a "*per se* antitrust violation" and a "group boycott," notably none of the cases relied upon by

the Amicus Curiae involves a physician's medical privileges at a hospital.  See Ambook Enterprises v. Time, Inc., 612 F.2d 604 (2d Cir. 1979) (book club company brought antitrust suit against two publishers, four advertising agencies, and a trade association of advertising agencies challenging dual rate system in which advertisements placed through agencies received a 15% discount while directly placed advertisements did not); Klor's, Inc. v. Broadway-Hale Stores, 359 U.S. 207 (1959) (retail store alleged antitrust violations against another retailer, manufacturers and distributors of certain well-known brand appliances alleging that the defendants conspired to either not to sell the appliances to the plaintiff retailer or to only sell to it at discriminatory prices and unfavorable terms); Bogan v. Hodgkins, 166 F.3d 509, 515 (2d Cir. 1999) (life insurance agents brought antitrust suit against general agent arising out of agreement among general agents to restrict transfer of subordinate agents); Smith v. Pro Football, Inc., 593 F.2d 1173 (D.C. Cir. 1978) (antitrust action brought by former professional football player against professional football team and professional football league for unlawful restraint arising out of player draft and its surrounding restrictions). The facts of those cases are wholly distinct.

Moreover, only where a complaint plausibly alleges a cause of action will a motion to dismiss be denied and discovery is warranted to determine whether, in fact, such a violation exists.  Mayor & Council of Baltimore v. Citigroup, Inc., 709

F.3d 129, 135, 140 (2d Cir. 2013) (citation omitted). Thus, in order to be entitled to discovery, the allegations in a complaint must plausibly allege a claim such that they "raise a reasonable expectation that discovery will reveal evidence of illegality." Id. at 140. (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citing Twombly, 550 U.S. at 556 ("[plausibility] [requires] . . . 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'").

As set forth above, the District Court properly held that Bhanusali failed to plausibly allege an antitrust injury or discrimination claims and dismissed the TAC. Bhanusali was, therefore, not entitled to discovery. The District Court cited to numerous cases in which antitrust claims were dismissed on a 12(b)(6) motion, and properly held that Bhanusali had failed to allege antitrust injury. [JA 230-234]. The District Court's inclusion of cases in its discussion which were decided at the summary judgment stage does not support the Amici Curiae's claim that Bhanusali was improperly denied discovery. Instead, the plaintiffs in those cases had met their burden at the pleading stage to be entitled to take discovery.

With respect to Bhanusali's discrimination claims, the Amici Curiae repeat Bhanusali's argument that the District Court applied an incorrect pleading standard when it dismissed the TAC's discrimination claims. As set forth above, the

District Court applied the proper standard in determining that the TAC failed to allege a plausible inference of discrimination.

Moreover, <u>Robinson v. Goulet</u>, 525 Fed. Appx. 28 (2d Cir. 2013), and <u>Boykin v. KeyCorp.</u>, 521 F.3d 202 (2d Cir. 2008), and the less-stringent standards applied by this Court therein, are inapplicable to this case because the plaintiffs in those cases were *pro se*. In <u>Robinson</u>, the Second Circuit noted that the "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." <u>Id.</u> at 30 (citing <u>Boykin</u>, 521 F.3d at 216. In <u>Boykin</u>, the Court specifically held that a separate standard for *pro se* pleadings was established by the Supreme Court in <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007): "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Boykin</u>, 521 F.3d at 214. Thus, the holdings in <u>Robinson</u> and <u>Boykin</u> that the allegations survived a motion to dismiss because they "indicate a possibility of discrimination," <u>Robinson,</u> 525 Fed. Appx. at 30, <u>Boykin</u>, 521 F.3d at 215-216, are inapplicable to this case, in which Bhanusali has been represented by counsel throughout this litigation.

Finally, <u>Gaala v. Brown</u>, 460 Fed. Appx. 469 (5th Cir. 2012), in which the Fifth Circuit held that the district court, on summary judgment, failed to utilize the McDonnell Douglas burden shifting framework in analyzing the plaintiffs'

discrimination claims, is not relevant to the dismissal of Bhanusali's discrimination claims pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the District Court's Order dated August 12, 2013 dismissing the third amended complaint should be affirmed in all respects.

Dated: March 17, 2014          Respectfully submitted,
      New York, New York

By: s/Douglas P.Catalano

Douglas P. Catalano
Neil G. Sparber
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103
Telephone: (212) 318-3000
douglas.catalano@nortonrosefulbright.com
neil.sparber@nortonrosefulbright.com

Attorneys for Defendants-Appellees Orange Regional Medical Center, Board of Directors of Orange Regional Medical Center, Lou Heimbach, Scott Batulis, Gerard Galarneau, M.D., and James Oxley, D.O.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure,

the foregoing brief is in 14-Point Times Roman proportional font and contains

11,331 words and thus is in compliance with the type-volume limitation set forth in

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:  New York, New York
        March 17, 2014

/s/ Douglas P. Catalano, Esq.
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103
Telephone:  (212) 318-3000
douglas.catalano@nortonrosefulbright.com
neil.sparber@nortonrosefulbright.com

*Attorneys for Defendants-Appellees Orange Regional Medical Center, Board of Directors of Orange Regional Medical Center, Lou Heimbach, Scott Batulis, Gerard Galarneau, M.D., and James Oxley, D.O.*